JOHN V. FARWELL & COMPANY, Appellants, v. STICK, KEMP & COMPANY, Defendants, THE STATE BANK BUILDING COMPANY, Intervener and Appellee, M. A. AND L. J. STICK, Interveners and Appellants.

**Fraudulent Conveyance:** EVIDENCE. Where the wives of partners who
1 hold valid notes against their husbands, buy goods of the firm and credit their value upon such notes, the sale is not void against creditors, though the firm be insolvent.

**Landlord's Lien:** WAIVER. A landlord has a lien for rent upon a stock
2 of goods situated in Sioux City. Part of it is moved to Ames and is there sold to third parties. The part remaining in Sioux City is then mortgaged. When about to be sold on foreclosure the landlord waived his right to his rent lien upon the mortgaged goods remaining in Sioux City. *Held,* this operated to release the Ames stock from the landlord's lien, as against said third parties who purchased same.

*Appeal from Woodbury District Court.*—HON. A. VAN WAGENEN, Judge.

WEDNESDAY, DECEMBER 19, 1894.

The firm of Stick, Kemp & Co. was composed of Daniel Stick, his son D. L. Stick, and J. A. Kemp. In June, 1891, the firm engaged in a business of general merchandise in Sioux City, Iowa, and for that purpose it leased of the intervener State Bank Building Company, a building, and occupied the same. The interveners M. A. and L. J. Stick are the wives, respectively, of Daniel and D. L. Stick. During September and the early part of October, 1891, the firm of Stick, Kemp & Co. shipped from its store in Sioux City, Iowa, to Ames, Iowa, a quantity of goods, of the value of six thousand three hundred and fifty dollars and thirty-five cents. On the twenty-fourth day of October, 1891, Stick, Kemp & Co. executed chattel mortgages on the stock of goods as follows: One to the National Bank of

Sioux City, to secure three thousand dollars; a second, to Farmers' Loan & Trust Company, for eight thousand dollars; and a third to secure, *pro rata*, John V. Farwell Company (plaintiff) for five thousand three hundred and twenty-six dollars and ninety-one cents, Marshall Field & Co. for seven hundred and sixty-six dollars and fifty-two cents, Carson, Pierie, Scott & Co. for one thousand four hundred and twelve dollars and seventy-one cents, and the National Bank of Dakota for four hundred and eighty dollars. On the day of the execution of these mortgages, the mortgagees took possession of the stock of goods, which invoiced seventeen thousand dollars. The goods were sold under the terms of the mortgages about November 17th, and the amount realized was only sufficient to pay off the first two mortgages, with the expenses of the sale. In November, 1891, plaintiff firm commenced this suit, aided by attachment, and the goods shipped to Ames were seized by virtue of the writ directed to Story county. Subsequently, by a written stipulation, the sheriff was authorized to sell the goods, and place the proceeds in the hands of the clerk of Woodbury county, to await a determination of the rights of the parties. The amount realized from the sale, after the expenses were paid, was two thousand three hundred and sixty-seven dollars and thirty cents, now held by the clerk of Woodbury county. The claims of the parties to this money are, briefly stated, as follows: That of the plaintiff firm, because of the indebtedness of Stick, Kemp & Co. to it, and of a prior lien by virtue of its attachment levied thereon; that of intervener State Bank Building Company, for the rent due and its landlord's lien, because the goods were a part of the stock in the store leased to Stick, Kemp & Co.; and that of M. A. and L. J. Stick, because, as members of the firm of Grove & Co., they purchased the goods of Stick, Kemp & Co., and, in pursuance of such purchase, they

were shipped to Ames, Iowa, to Grove & Co., and were the property of such firm when seized by virtue of the attachment. The issues involve the questions of estoppel, waiver, and fraud, the particular facts as to which can better be stated in connection with the particular questions when considered. The district court found that the sale by Stick, Kemp & Co., to interveners M. A. and L. J. Stick, of the goods shipped to Ames, was fraudulent and void; that the indebtedness of Stick, Kemp & Co. to plaintiff was five thousand two hundred and twenty-five dollars, which amount is stipulated to be correct; that the indebtedness to the State Bank Building Company is two thousand two hundred and forty-seven dollars and fifty cents, besides attorney's fees and costs. It then adjudged the lien of the State Bank Building Company to be prior and superior to that of the plaintiff, except that it allowed no lien for attorney's fees, and established the lien of the plaintiff as junior to that of the State Bank Building Company. The plaintiff and interveners M. A. and L. J. Stick appealed.

*A. H. Burton* for plaintiff, appellant.

*Gantt & Briggs* for M. A. and L. J. Stick, interveners, appellants.

*M. J. Sweeley* for appellee State Bank Building Company.

Granger, C. J.—I. It is important to first determine the ownership of the goods attached. The facts in support of the claim of M. A. and L. J. Stick to the ownership are substantially as follows: We have said that M. A. Stick is the wife of Daniel Stick, and that L. J. Stick is the wife of D. L. Stick. The firm of Grove & Co. consisted of M. A. and L. J. Stick and D. F. Grove. The terms of the copartnership were that

M. A. and L. J. Stick should furnish the capital and be the entire owners of the property of the firm, and that Grove should be the salesman and do the work for the firm, and receive a stated compensation and one-tenth of the profits. The purchase of the goods was made by M. A. and L. J. Stick, M. A. Stick held the note of Stick, Kemp & Co. for five thousand dollars, and L. J. Stick held a note of the same firm for three thousand five hundred dollars. The payment for the goods was made by an indorsement on the note held by M. A. Stick for three thousand eight hundred and fifty dollars and thirty-five cents, and on that held by L. J. Stick for two thousand five hundred dollars. These indorsements were made on the fifteenth day of October, 1891. We do not think that the evidence sustains the claim that the sale of the goods was fraudulent. It is true that the transaction is largely a family affair, and, while that fact should be given due consideration in determining a question of fraud, care should be taken to avoid results founded only upon facts showing opportunities for fraudulent combinations with, perhaps, some methods of dealing not in strict accord with general business rules. As these women are the wives of members of the firm whose notes they held, the question of good faith in the transaction of taking the notes properly leads to an inquiry as to the consideration for the notes. Briefly stated, the claims are these: That M. A. Stick received from her father's estate, some twenty-two years ago, one thousand dollars; that she received from her mother's estate three hundred dollars; that one nephew boarded with her some six years, for which she received one thousand two hundred and fifty dollars, and another nephew for five years, from whom she received one thousand dollars. The amounts were invested as loans, so that the interest made up the amount for which the note of the firm was given. It appears that

in April, 1889, she loaned to her husband four thou-
sand dollars to buy land in Dakota, and took his note
therefor. This note was to be paid when the land was
sold. It was this note, with accumulated interest, that
made up the five thousand dollar note. As to the three
thousand five hundred dollar note of L. J. Stick, it
appears in evidence that she had no money in her own
right, but that her father-in-law, Daniel Stick, gave
to her and her husband a homestead in Vinton, Iowa,
which was sold, and a homestead bought in Huron,
Dak., which was sold, and another purchased; so that,
in the spring of 1891, they had a homestead valued at
three thousand one hundred dollars. In the spring of
1891 the firm of Stick, Kemp & Co. made a purchase in
Indiana of a stock of goods and millinery, of the value
of some twenty-two thousand dollars, and these goods,
with others, were put into the store at Sioux City. The
goods purchased in Indiana were paid for in real
estate, except a small amount, and of the real estate
so applied was the land owned by Daniel Stick, pur-
chased, in part at least, with the money received from
his wife, and also the homestead of D. L. and L. J.
Stick. At this time it was agreed that, for the five
thousand dollars due M. A. Stick from her husband,
the firm of Stick, Kemp & Co. should give her its note,
which it did. The note of L. J. Stick was given as fol-
lows: Her husband desiring to apply the homestead
in part payment for the goods purchased in Indiana,
it was agreed that, if L. J. Stick would consent to its
sale, she should have three thousand five hundred dol-
lars of the consideration, and a note of Stick, Kemp &
Co. therefor, and the note was in that way given.
These facts are shown by the testimony of the women
and their husbands, and, in part, by other evidence.
There are facts and circumstances to both confirm and
contradict these statements, but, on the whole, we
regard the claims as fairly established; or, as we may

say with greater certainty, the evidence fails to show that the taking of the notes, or either of them, was fraudulent.   The proposition is not to be seriously questioned that, as to the homestead, the husband had the right to so dispose of the proceeds, as it does not appear that he was then insolvent, or that any existing creditor was prejudiced by it.   Our conclusion is that the plaintiff has no lien on the property attached.

II.   The district court established the lien of the State Bank Building Company on the goods, and the judgment in that respect is questioned on this appeal. That the State Bank Building Company had a lien on these goods up to the time of the sale of the stock on which the mortgages were executed, which was November 17, 1891, there is no dispute, for they at one time constituted a part of the stock in the store for which rent is due.   But the claim is that on the day of the sale, and before it took place, the building company, through its president, waived its lien, and the facts on which the claim is based are as follows:   When the people had assembled for the sale, James F. Toy, who was president of the company, publicly stated to those present that the goods about to be sold, and then in the building, would be sold free of any claim of the company for rent, and that the proceeds of the sale could be applied in payment of the mortgages; and it is not questioned but that, as to the goods in the building, the lien was waived.   M. A. and L. J. Stick say that the stock of goods at Sioux City, on which the building company had a lien, and the one at Ames, on which it also had a lien, constitute two funds, or a double fund, on which it held security for rent; and that because of the interest of M. A. and L. J. Stick in the goods at Ames, being the owner's, subject to the lien for rent, it was the company's duty to first exhaust the stock at Sioux City, and in that way preserve the interests of both parties.   Such a rule

has universal support on authority, and is founded in principles of natural justice. We are then to inquire what facts there are to justify a waiver of the lien by the building company on the stock at Sioux City in favor of the mortgagees, and then resort for its rent to the stock at Ames. When the women purchased the goods, the only incumbrance on any of the stock was the lien of the building company for rent, of which they took notice. Later the mortgages were given on the stock at Sioux City, but not on that at Ames. With this situation, the equities of the parties were as follows: First, that of the building company, with a lien on both stocks or funds; second, that of the women, being owners of the stock at Ames, subject to the lien of the building company, after exhausting the stock at Sioux City; and, third, that of the mortgagees, being simply a lien on the goods at Sioux City junior to the lien of the building company. The course of procedure that would preserve such equities has the sanction of the law. Any other has not. It will be observed that the mortgagees have no right whatever to payment from the proceeds of the Ames stock of goods. No claim would be made for such a direct application. It remains to be seen if it can be done indirectly. By the course of procedure adopted when the goods at Sioux City were sold, because of the waiver by the building company, the mortgagees were permitted to profit to the extent of the building company's lien on that fund, and, as a consequence, the fund arising from the stock at Ames must pay the rent; and the result is that the women must pay a part of the mortgage for which they were neither legally nor equitably liable. It appears that Mr. Toy was president of the Farmers' Loan & Trust Company, as well as of the building company, and the loan company was a mortgagee that, by the course adopted, received payment in full, and then, by a resort

to the Ames fund for the building company, both companies represented by him were paid. The inference is strong, if not conclusive, that the waiver was for that purpose. But, however that may be, the loan company stood, as to its legal rights, as did the other mortgagees. The mortgagees had not a semblance of a right to the Ames fund for their debts; nor had Mr. Toy, as president of the building company, any right to waive its lien on the Sioux City fund or stock, and then resort to the Ames fund, when, without the waiver, he would not be permitted to do so. This, to us, is not a doubtful question. The case, in this particular, has been treated in argument as governed by the rules for marshaling assets, and, so treated, the result must be the same. The contention made by the building company against the rule as urged is that, as to the building company, the cause should be treated as one at law, and not in equity. The district court transferred the issues to the equity side of the docket for trial, against the objections of the building company; and it is urged that the issues present only questions triable in a law action. The issues present no contention to the right of the building company to its judgment for rent. The issues for trial were as to priorities of liens between the plaintiffs and the two interveners, and the issues in this respect called for relief in equity. The prayer to the intervention petition of the building company is as follows: "Wherefore intervener asks judgment establishing its lien against the said property, and making the same the first and paramount lien thereon; that the proceeds of the said property sold under the said writ of attachment herein should be first applied to the payment of the amount now due the intervener, with interest, attorney's fees, and costs; and that, of the remainder thereof, an amount sufficient to pay the rent yet to become due under the said lease be held by the court

to await the maturity of the said amounts, and for
such other orders as will fully protect the rights of
intervener." The prayer to the petition of M. A. and
L. J. Stick is for equitable relief against the building
company, and, to our minds, there is no doubt that the
action of the court in transferring the cause for trial
was right.    Our conclusions lead to the following
results:   That the interveners M. A. and L. J. Stick
take the fund arising from the stock of goods at Ames,
discharged of any lien; that the costs in both courts
be paid by plaintiff and intervener the State Bank
Building Company, each one-half.    On the plaintiff's
appeal, the judgment is affirmed, except that no lien is
to be established in its favor.    On appeal of M. A.
and L. J. Stick, the judgment is *reversed.*

Supreme Court of Iowa.    October 11, 1895.

Supplemental opinion.

Granger, J.—In a petition for a rehearing, our
attention is called to a statement in the opinion, as
follows: "The case, in this particular, has been treated
in argument as governed by the rules for marshaling
assets, and, so treated, the result must be the same."
Counsel, on the application for a rehearing, are in con-
tention as to the rule and its application.    It will be
seen that our disposition of the case is on other grounds
as to the State Bank Building Company and M. A. &
L. J. Stick, who are the only parties contending as to
this particular question.    With our conclusion that,
because of the acts of the State Bank Building Com-
pany, its lien on the goods purchased by M. A. & L. J.
Stick was lost, the statement in the opinion as to the
application of the rule for marshaling assets is likely

inaccurate; and as it is but incidental, and not important to the controlling thought of the opinion, it should be disregarded. The petition for a rehearing is *overruled.*